# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# COLUMBUS DIVISION

| | | |
|---|---|---|
| **WILBUR ALLMOND,** | : | |
| **Plaintiff**, | : | |
| v. | : | Civil Action No. 4:05-cv-96(HL) |
| **AKAL SECURITY, INC.** and **ALBERTO GONZALES, Attorney General of the United States,** | : | |
| **Defendants**. | : | |

## ORDER

Plaintiff's Motion to Disqualify Dr. Marc Kramer as an Expert Witness (Doc. 72) is before the Court. The Court heard oral argument on the Motion on December 19, 2006. After consideration of the arguments of the parties, and as more fully set forth herein, the Court denies the Motion.

**I. BACKGROUND**

Plaintiff, Wilbur Allmond, is a former Court Security Officer ("CSO") working for the United States Marshals Service under a contract with Akal Security, Inc. He was terminated from his employment after the Marshals Service determined that he failed to meet the contract medical requirements for the CSO position. Specifically, the Marshals Service reviewing physician, Louis Chelton, concluded that Allmond was not medically qualified to perform the essential functions of the job because a "severe conversational hearing loss" prevented him from passing the hearing portion of the physical exam required for the job. As part of its fitness

requirements, the Marshals Service requires that applicants be able to pass the hearing test without the use of hearing aids.[1]

After he was terminated from his employment, Allmond brought this lawsuit, alleging discrimination in violation of the Americans with Disabilities Act, 42 U.S.C.A. §§ 12101 to 12213, and the Rehabilitation Act of 1973, 29 U.S.C.A. §§ 701 to 796l, and naming as Defendants Akal and the Attorney General of United States. One of the issues presented by Allmond's case is whether the Marshals Service ban on the use of hearing aids during testing is a business necessity. In defending its case against Allmond, the Attorney General secured Marc B. Kramer, Ph.D., to serve as an expert witness. Among other things, Kramer's report supports the Marshals Service decision to require unaided hearing testing and further supports the Marshals Service directive that hearing aids should be used "only as an *enhancement* and not as an alternative method to meet unaided hearing standards." (Pl.'s Mot. to Disqualify, Doc. 72-4 at 6.) Allmond has now moved to disqualify Kramer on the grounds that his opinions "are not properly grounded in science or the facts" and that his testimony is irrelevant. (Pl.'s Mot. to Disqualify at 6-7.)

## II. STANDARDS OF ADMISSIBILITY FOR EXPERT TESTIMONY

Rule 702 of the Federal Rules of Civil Procedure governs the admissibility of expert

---

[1] It should be noted here that Allmond did not own or wear hearing aids at any time before or during his tenure with Akal and, in fact, was not aware that he had a hearing problem until he applied for the CSO position and took the required physical. He clams that after he was told he was being terminated because of his failure to pass the hearing test, he asked if he would be given the opportunity to use hearing ads. He says that he was told that hearing aids "don't count."

testimony and provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. Therefore, according to Rule 702, expert testimony is only admissible if it satisfies three broad requirements: (1) the witness offering the testimony must have knowledge, skill, experience, training, or education that qualifies the witness as an expert; (2) the witness's opinions must be reliable; and (3) the witness's opinions must assist the trier of fact. In addition, "[t]he burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence." Allison v. McGhan Med. Corp., 184 F.3d 1300, 1306 (11th Cir. 1999).

The first test under Rule 702, therefore, is whether the witness offering the testimony is qualified to do so. There is no bright-line rule for determining whether a given witness is qualified to offer expert testimony. Rather, the decision is inherently case-specific. Nevertheless, Rule 702 does offer a basic framework for evaluating a witness's qualifications by providing that expertise must be established by one or more of the following bases: knowledge, skill, experience, training, or education. Fed. R. Evid. 702.

In fixing the requisite level of knowledge, skill, experience, training, or education an expert witness must posses, courts are called upon to balance the advantages and disadvantages of expert testimony. On one hand, allowing only the most qualified witnesses to serve as experts

reduces the risk a jury will overvalue the opinions of a minimally qualified witness simply because the witness was classified as an expert by the court. On the other hand, requiring stellar qualifications of all witnesses could unnecessarily deprive the jury of helpful testimony based upon minor shortcomings in a witness's qualifications. As a result, courts liberally construe a witness's qualifications in favor of expert status and consider gaps in a witness's qualifications a matter for the jury to consider in determining what weight to give to the testimony. *See* Thomas J. Kline, Inc. v. Lorillard, Inc., 878 F.2d 791, 799 (4th Cir. 1989).

A witness's qualifications must correspond to the subject matter of his or her proffered testimony. *See* Jones v. Lincoln Elec. Co., 188 F.3d 709, 723 (7th Cir. 1999) (citing Carroll v. Otis Elevator Co., 896 F.2d 210, 212 (7th Cir.1990)) ("Whether a witness is qualified as an expert can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony."). In other words, a witness qualified as an expert in one subject may not offer expert testimony on another subject. General knowledge in a field, however, is normally sufficient to qualify a witness as an expert in that field's specialties as well. For example, most courts conclude that a general practitioner can offer expert testimony concerning medical conditions routinely treated by specialists. *See, e.g.,* Payton v. Abbott Labs, 780 F.2d 147, 155 (1st Cir. 1985) (holding two board-certified obstetrician-gynecologists were qualified to offer expert testimony in teratology, the study of abnormal development). Furthermore, unlike lay witnesses, it is not necessary that an expert witness have personal knowledge of the facts at issue in the case. *See* Fed. R. Evid. 703 ("The facts or data in the particular case upon which an expert bases an opinion or inference

may be those perceived by or made known to the expert at or before the hearing.").

In addition to finding that the proposed expert is qualified, the Court must also find that the testifying witness's opinions are reliable. In Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579, 113 S. Ct. 2786 (1993), the Supreme Court of the United States directed district courts faced with the proffer of expert testimony to conduct "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." Id. at 592-93, 113 S. Ct. at 2796. Although Daubert originally involved only scientific expert testimony, the Supreme Court, in Kumho Tire Co. v Carmichael, 526 U.S. 137, 119 S. Ct. 1167 (1999), explained that the same type of analysis was also required when evaluating non-scientific expert testimony.

To assist courts in conducting the required assessment, the Supreme Court provided a non-exhaustive list of four factors to consider: "(1) whether the theory or technique can be tested; (2) whether it has been subjected to peer review; (3) whether the technique has a high known or potential rate of error; and (4) whether the theory has attained general acceptance within the scientific community." Allison, 184 F.3d at 1312 (citing Daubert, 509 U.S. at 593-94, 113 S. Ct. at 2796). "These factors are illustrative, not exhaustive; not all of them will apply in every case, and in some cases other factors will be equally important in evaluating the reliability of proffered expert opinion." United States v. Frazier, 387 F.3d 1244, 1262 (11th Cir. 2004) (citations omitted). Thus, "the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable."

Kumho Tire, 526 U.S. at 152, 119 S. Ct. at 1176.

Regardless of the specific factors considered in evaluating the reliability of expert testimony, "[p]roposed testimony must be supported by appropriate validation- i.e., 'good grounds,' based on what is known." Daubert, 509 U.S. at 590, 113 S. Ct. at 2795. In most cases, "[t]he expert's testimony must be grounded in an accepted body of learning or experience in the expert's field, and the expert must explain how the conclusion is so grounded." Fed. R. Evid. 702, advisory committee's notes. Yet, "[i]f the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Id. In any case, "[p]resenting a summary of a proffered expert's testimony in the form of conclusory statements devoid of factual or analytical support is simply not enough." Cook ex rel. Tessier v. Sheriff of Monroe County, 402 F.3d 1092, 1113 (11th Cir. 2005).

In addition to satisfying the reliability requirement, expert testimony must assist the trier of fact to decide a fact in issue. In short, "expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person." Frazier, 387 F.3d at 1262. Thus, expert testimony regarding issues within the understanding and experience of average citizens is properly excluded. United States v. Rouco, 765 F.2d 983, 995 (11th Cir. 1985). Nevertheless, "expert testimony is admissible if it will simply assist the trier of fact to understand the facts already in the record, even if all it does is put those facts in context." 4 Joseph M. McLaughlin et al., Weinstein's Federal Evidence § 702.03[1] (2d ed. 2007).

However, "[p]roffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." Frazier, 387 F.3d at 1262-63.

III. ANALYSIS

Applying the foregoing standards to the facts of this case, the Court is satisfied that Kramer's testimony satisfies the requirements set forth at Rule 702. As to the first requirement–the qualifications of the witness, the Court finds that Kramer is qualified by his knowledge, experience, training, and education in the field of audiology. He holds a Ph.D. in Audiology and Psychoacoustics; he has been practicing in the field of Audiology since 1967; he serves as an Adjunct Assistant Professor of Audiology in Otolaryngology at the Well College of Medicine of Cornell University; he is the Director of the Hearing and Speech Service in the Department of Otolaryngology at the New York Presbyterian Hospital/Weill Cornell Medical Center; he has served as consulting Audiologist to the Head and Neck Service in the Department of Surgery at the Memorial Sloan Kettering Cancer Center; and is a consultant in Audiology to the New York City Police Department and the New York City Fire Department. (Pl.'s Mot. Disqualify, Doc. 72-4 at 1.) In view of Kramer's significant credentials and extensive past and ongoing experience in the field of audiology, the Court is satisfied that the Government has met its burden of establishing that Kramer is qualified to testify competently on the issue of the propriety of the Marshals Service requirement that its hearing test be taken without the use of hearing aids.

However, as the Eleventh Circuit has noted, an individual may be qualified as an expert

yet offer unreliable testimony. Frazier, 387 F.3d at 1261. Thus, "the *reliability* criterion remains a discrete, independent, and important requirement for admissibility." Id. Therefore, the Court must assess the reliability of Kramer's experience-based testimony. With respect to this issue, the "same criteria that are used to assess the reliability of a scientific opinion *may* be used to evaluate the reliability of non-scientific, experience-based testimony." Id. at 1262 (emphasis added). In some cases, however, the traditional Daubert factors will not aid in determining reliability and, in such cases, the trial court is not required to apply them. Id. As the Eleventh Circuit noted in Frazier: "Exactly *how* reliability is evaluated may vary from case to case, but what remains constant is the requirement that the trial judge evaluate the reliability of the testimony before allowing its admission at trial." Id.

In this case, Allmond argues that Kramer's opinions lack scientific basis. (Pl.'s Mot. Disqualify at 1, 4, 5, 6, 9, 10, 11, 12, 13, 14.) Allmond's argument overlooks that neither Rule 702 nor Daubert and its progeny require that all expert opinions be steeped in scientific analysis to be deemed reliable. As noted previously, in some cases, for example when the expert is relying primarily on experience, the expert may demonstrate reliability by explaining "*how* that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Frazier, 387 F.3d at 1261.

In this case, Kramer's conclusion is that it is prudent to allow hearing aid use by a CSO "*only* as an *enhancement* and not as an alternative method to meet unaided hearing standards." (Pl.'s Mot. Disqualify, Doc. 72-4 at 6.) Drawing on his considerable clinical experience in the field of audiology, Kramer sets out a list of eleven things he knows about hearing aids and their

8

use. These observations include the following: the risk that batteries in the device may fail without warning and render the hearing aid inoperative; the possibility of sudden failure of the device; the possibility of electronic interference from an outside source; the possibility that the device could be dislodged during a physical confrontation; and the possibility that the device might be incompatible with sound monitoring equipment. (Id. at 5-6.) Kramer then extrapolates from this list that one, or a combination of two or more, of the events could occur without warning, so as to leave a CSO without the use of his hearing aid, thereby forcing him to rely on his unaided hearing. He further opines that a CSO whose unaided hearing fails to meet the Marshals Service minimum standards for unaided hearing might not be able to function as well as an officer whose unaided hearing meets the minimum standard. He thus concludes that the CSO whose unaided hearing is below the minimum standard might, therefore, pose a risk to those he is supposed to protect. In the Court's view, this is enough to satisfy Rule 702's reliability requirement. Certainly Kramer offers more than a "because I said so," as Allmond suggests (Pl.'s Reply at 3), to support his opinion.

Could Kramer have offered more scientific support for his conclusions? Absolutely. He could have included studies showing the risk of battery failure, or the risk of electronic interference, or the ease with which hearing aids can become dislodged during physical confrontations, but it is not necessary that he include these things in order for the Court to find his testimony reliable. Contrary to the suggestions offered by Allmond's arguments, Rule 702's reliability requirement does not mean that the expert's testimony is beyond refute. Indeed, many of the bases put forth by Kramer may not withstand challenge under cross-examination.

Nevertheless, the ultimate conclusion that he puts forth is supported by reasons, drawn from his training and education and experience in the field, and sufficient to satisfy the reliability requirement of Rule 702.

The third requirement of Rule 702 is that it assist the trier of fact to decide a fact in issue. Kramer's testimony satisfies this requirement, as well. The average lay person is unlikely to have experience with hearing aids or an understanding of their operation. Although a jury might have some opinions about what might go wrong with hearing aids, such opinions would likely be limited. Kramer's testimony would offer insight into the issue beyond that of the average citizen and would relate directly to the issue of whether the Marshals Service decision to require unaided hearing tests was valid.

### III. CONCLUSION

In sum, the Court finds that Kramer is qualified as an expert in the field of audiology, and that his testimony is reliable and would assist the trier of fact to decide a fact in issue. As such, Plaintiff's Motion to Disqualify Dr. Marc Kramer as an Expert Witness (Doc. 72) is hereby denied.

**SO ORDERED**, this the 29th day of March, 2007.

> *s/ Hugh Lawson*
> **HUGH LAWSON, JUDGE**

mls